Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000521
28-JUN-2013
08:28 AM

NO. CAAP-12-0000521

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF TM

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-S NO. 10-002K)

SUMMARY DISPOSITION ORDER
(By: Foley and Fujise, JJ.,
with Nakamura, C.J., dissenting)

Mother-Appellant (Mother) appeals from the Family Court of the Third Circuit's (Family Court) "Order Terminating Parental Rights and Awarding Permanent Custody to DHS" (TPR Order) entered on April 17, 2012, and "Findings of Fact and Conclusions of Law re TPR Hearing" entered on May 3, 2012.[1] In the TPR Order, the Family Court, *inter alia*, terminated Mother's parental rights to TM, appointed the Director of the Department of Human Resources (DHS) to be permanent custodian of TM, and ordered DHS's Permanent Plan dated December 6, 2011.

On appeal, Mother argues that the Family Court abused its discretion when it (1) failed to appoint her counsel until after TM had been in foster care for nineteen months and (2) refused to continue the termination of parental rights (TPR) hearing so she could continue working toward providing TM with a safe family home.

---

[1] The Honorable Aley K. Auna, Jr. presided.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's points of error as follows.

(1) **The Family Court did not abuse its discretion by failing to appoint counsel to represent Mother prior to September 13, 2011.** Mother fails to demonstrate that the Family Court abused its discretion when it failed to appoint counsel to represent her earlier in the proceedings. See Hawaii Revised Statutes (HRS) §§ 587-34 (2006) and 587A-17 (Supp. 2012); In re Doe, 84 Hawai'i 41, 46, 928 P.2d 883, 888 (1996). She challenges none of the Family Court's findings of fact but instead, argues in a vague and conclusory manner that she could have avoided termination proceedings if counsel had been appointed sooner. Without more, we cannot hold that the court's omission "[led] to [an] erroneous decision[.]" Lassiter v. Dep't of Soc. Serv. of Durham Cnty., N.C., 452 U.S. 18, 27 (1981); See also In re A Children, 119 Hawai'i 28, 57, 193 P.3d 1228, 1257 (App. 2008).

An independent review of the record reveals no indication that the lack of earlier-appointed counsel prejudiced Mother's substantial rights. See In re Doe, 99 Hawai'i 522, 534 n.18, 57 P.3d 447, 459 n.18 (2002). The Family Court was well aware that Mother was entitled to a GAL and her own attorney:

> Now, [Mother], her situation is a little different, and that
> is because she's a minor under the law, she's entitled to a
> guardian ad litem [GAL]. At the same time she is a mother,
> a parent, and so she's entitled to an attorney. I'm going
> to try my best to find a person that can act in both
> responsibilities. There may be, though, the situation where
> she will have both an attorney and a [GAL], two people,
> because what the [GAL] may feel would be in her best
> interest may not be what she would like. So that's why she
> would need an attorney.

It appears that Mother's GAL voiced the possibility that Mother would need an attorney in addition to her services. Three days after her appointment, the GAL told the Family Court that she needed to speak with Mother "because if there's going to be a difference of opinion in working as a [GAL] than working as her

2

attorney, then I would be suggesting that she have a separate attorney to deal with her as a mother over [TM]." However, no application for court appointed counsel was filed until, at the Family Court's suggestion that the GAL help Mother file an application for appointed counsel, one was filed on September 19, 2011.

However, the record shows that the proceedings were not adversarial in nature when these proceedings began in January 2010. When the Family Service Plan was filed on February 23, 2010, the ultimate goal was to "Maintain [Mother] and [TM] in a safe family home without the need for further DHS Intervention." There were a number of resources made available to Mother, when the plan was designed to achieve reunification of TM with Mother: The Family Court appointed a GAL for Mother four days after she and TM were placed in foster care. Mother attended all hearings with her GAL. She was provided with the services of a therapist, a substance abuse counselor, a probation officer, a foster parent and DHS social worker. Her substance abuse counselor and probation officer testified on Mother's behalf at the termination hearing.

Most importantly, Mother was counseled by the Family Court itself on what was expected of her if she wanted to retain her child. At a combined periodic review hearing and permanency hearing on January 26, 2011, both the DHS social worker and TM's GAL recommended that Mother be given more time to reunify. The court approved a revised Service Plan, which added a requirement that Mother "[f]ollow all the requirements of her probation, including additional treatment needs such as substance abuse treatment, etc."[2]

At the same January 26, 2011 hearing, the Family Court addressed Mother and Father:

---

[2] Mother was on probation for Promoting a Detrimental Drug in the Second Degree, Theft in the Second Degree, and Violation of Probation.

Now, you know, the both of you are very young parents, and by your own choice you've become parents. And so with that in mind, you've got to accept the responsibility of being parents. So by your choice, you have in essence given up your childhood. Okay? You've got someone you are responsible for, and if you don't want to be responsible for [the child], then I'm going to have [the child] placed elsewhere permanently. I'm sorry. Your teenage years is over. Okay?

So what I'm really telling you is you need to put yourself on a direct track here and take care of your child. So whatever it takes, you need to do. Follow through with your service. When you're in school, ma'am, you take care of business. Skip your friends. Tell them go take a hike because you now have a responsibility to take care of a child that's vulnerable, that needs your care, that needs the mothering that only you can give. The longer your child stays away from both of you, the more difficult it's going to become.

Now good parents do not use drugs. . . . You should be spending a hundred percent of your time caring for your child, learning the skills.

. . . .

So in review, two things: One is skip the playing around and get down to business and learn how to be a great parent. You've made that choice. You need to accept that responsibility, and if you don't want to accept that responsibility, then we'll do something about it. Number two, part of . . . accepting responsibility is you've got to do everything in your power to live clean and sober and not get into trouble . . . .

At the May 24, 2011 periodic review and permanency hearing, DHS was still interested in giving Mother more time to make efforts toward reunification. The Family Court agreed, directing DHS to file its termination of parental rights petition "anytime" but that a periodic review would be held after Mother reached her eighteenth birthday, September 8, 2011. Turning to Mother and TM's father, the Family Court again counseled,

You know, it's really up to you folks. I mean you want to continue to use drugs, that's really up to you folks. I mean no one can force you to live a clean life. And if your child's being placed into permanent custody is not a motivating factor, then, you know, it's a sad day. Your child deserves the best, and if you cannot be the best, then someone else will.

So I hope the message is very clear to you folks. Be involved in services. Get off the alcohol. Stay away from the drugs. You'll be fine. But children do not need to be raised in a drug-infested home. I think you can agree with that, right? So you now have -- you've always had this responsibility. That's a choice that you made when you gave

> birth to a child, both of you. Now, this might sound like I'm heartless, but I'm sorry. This is reality, right? It's your choice.
>
> . . . .
>
> September 13 at 8:30 a.m. Now, that's not a trial date. that's a date to find out where we're going to go. The state's going to file their motion to terminate parental rights. We'll hear that motion at that time. If that's something that you folks want to agree to, that's great. We'll terminate parental rights, and we'll move forward.
>
> If that's something that if you make significant progress and you show some signs that you are serious, then, you know, we many not set a termination of parental rights hearing. The statute says we have to. We'll see what -- we'll cross that bridge when we get there. Okay?

It appears that Mother received information and advice from a number of sources regarding what was required to maintain her rights to TM prior to any termination petition being filed. On this record, it does not appear that the Family Court erred in not *sua sponte* appointing counsel for Mother before the September 13, 2011 periodic review and permanency hearing.

In re A Children is distinguishable. Mother was represented by an attorney for over five months prior to the TPR hearing. Mother does not argue that she failed to understand or would have benefitted from earlier guidance regarding the relationship between her January 21, 2011 DHS Family-Service-Plan (Service-Plan) requirements and probation conditions. Further, she has not demonstrated and the evidence in the record on appeal does not reveal that she lacked the education or intelligence to understand the proceedings; misunderstood any part of the proceedings; failed to comprehend the meaning or significance of any Service-Plan requirement; was marginalized during the proceedings; or missed any hearings.

(2) The Family Court did not abuse its discretion by denying Mother's motions to continue the TPR hearing. Mother was given a reasonable amount of time, more than two years, after TM was placed in foster custody, to demonstrate that she was willing and able to provide TM with a safe family home. See HRS § 587A-33(a)(2) (Supp. 2012).

5

(3) **The Family Court's ultimate determination was not clearly erroneous.** The record on appeal provides substantial evidence to support the Family Court's conclusion that Mother was not able or willing to provide TM with a safe family home, even with the assistance of a service plan, and would not become able or willing to do so within a reasonable period of time. See <u>In re Doe</u>, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001).

Therefore,

IT IS HEREBY ORDERED that the Family Court of the Third Circuit's "Order Terminating Parental Rights and Awarding Permanent Custody to DHS" entered on April 17, 2012, and "Findings of Fact and Conclusions of Law re TPR Hearing" entered on May 3, 2012, are affirmed.

DATED: Honolulu, Hawai'i, June 28, 2013.

On the briefs:

Benjamin E. Lowenthal,
for Mother-Appellant.

Associate Judge

Mary Ann Magnier and
Nolan Chock,
Deputy Attorneys General,
for Petitioner-Appellee.

Associate Judge

DISSENTING OPINION BY NAKAMURA, C.J.

I respectfully dissent. In my view, the Family Court of the Third Circuit (Family Court) abused its discretion in waiting too long to appoint counsel for Mother-Appellant (Mother). Accordingly, I would vacate the order terminating Mother's parental rights and remand the case for further proceedings.

Mother was only fifteen years old when she gave birth to TM. Approximately six months later, Mother and TM went to a domestic violence shelter due to a reported incident of domestic violence between TM's father and Mother. The Department of Human Services (DHS) sought, and the Family Court granted, temporary foster custody for both Mother, who had by then turned sixteen, and TM. Mother's foster custody was based on the threat of neglect and harm posed by her own mother's inability to care for her.

In addition to the challenges faced by Mother due to her being a minor, lacking stable family support, with a newborn child, Mother had mental health issues. Mother was diagnosed with bi-polar disorder (later reassessed as post-traumatic stress disorder) and assessed as suffering from depression and anxiety. Mother also had substance abuse issues -- she was being supervised by a juvenile probation officer and was required to complete a substance abuse program. Despite these challenges, the record indicates that at the time of her parental termination hearing, Mother had matured, had made significant progress in turning her life around, and had recognized TM as her first priority. The Family Court, however, determined that these changes had come too late and Mother had not made sufficient progress to enable her to provide TM with a safe family home.

The United States Supreme Court has adopted a case-by-case balancing test to determine whether parents faced with the deprivation of their parental rights are entitled to appointed counsel under the Due Process Clause of the United States Constitution. See Lassiter v. Dep't of Social Servs. of Durham Cnty., 452 U.S. 18, 31-32 (1981); In re "A" Children, 119 Hawai'i

28, 50, 193 P.3d 1228, 1250 (App. 2008). The Family Court appointed a guardian ad litem for Mother (due to Mother's status as a minor) to protect Mother's rights and interests as a child when TM and Mother were first placed in foster custody. However, both the Family Court and the guardian ad litem recognized that Mother's rights and interests as a parent were distinct from and may conflict with Mother's rights and interests as a child. Nevertheless, the Family Court waited until nineteen months after TM was placed in foster custody before appointing counsel for Mother. Until that time, despite the many challenges facing Mother, she did not have an attorney to represent her regarding her rights and interests as a parent and to advise her on how to safeguard, and avoid the termination of, her parental rights over her child. Indeed, Mother did not have an attorney to advise and represent her as a parent while she was a minor -- Mother was not appointed counsel until after she became an adult.

Under the circumstances of this case, I would hold that the Family Court abused its discretion in failing to appoint counsel until nineteen months after TM had been placed in foster custody. In my view, the Family Court did not appoint counsel early enough before the parental termination hearing to give Mother a fair opportunity to defend against the DHS's request to terminate her parental rights. See In re "A" Children, 119 Hawaiʻi at 57-59, 193 P.3d at 1257-59.

*Craig H. Nakamura*

2